UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

In re:

Palm Beach Finance Partners, L.P. and                    Case No. 09-36379-BKC-PGH
Palm Beach Finance II, L.P.,                             Chapter 11

       Debtor(s).

_____/

Barry E. Mukamal, in his capacity as                     Adv. Case No.
Liquidating Trustee for the Palm Beach
Finance Partners Liquidating Trust and
the Palm Beach Finance II Liquidating
Trust;

       Plaintiff,

v.

Mark Johnson,

       Defendant.

_____ _____/

## COMPLAINT TO RECOVER TRANSFERS

Barry E. Mukamal ("*Plaintiff*"), in his capacity as Liquidating Trustee for the Palm

Beach Finance Liquidating Trust and the Palm Beach Finance II Liquidating Trust (collectively,

the "*Liquidating Trusts*"), sues Mark Johnson ("*Defendant*") and alleges as follows:

### PARTIES, JURISDICTION AND VENUE

1.     Palm Beach Finance Partners, L.P. ("*PBF I*") and Palm Beach Finance II, L.P.

("*PBF II*") (PBF I and PBF II are referred to each as a "*Palm Beach Fund*" or collectively, the

"*Palm Beach Funds*") were Delaware limited partnerships whose principal place of business

was located in Palm Beach County, Florida.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363
{Firm Clients/4189/4189-1/00860217.DOC.}

2.     The Palm Beach Funds were formed to make the investments described in *Section I.A* below. PBF I was formed in 2002 while PBF II was formed in 2004.

3.     The general partner for the Palm Beach Funds was Palm Beach Finance Capital Management, L.P. ("***PBLP***"). The investment manager for the Palm Beach Funds was Palm Beach Capital Management, LLC ("***PBLLC***"; and together with PBLP, the "***Palm Beach Managing Entities***").

4.     On November 30, 2009 ("***Petition Date***"), the Palm Beach Funds filed voluntary petitions under Chapter 11 of the United States Bankruptcy Code. Orders for relief were entered and Mr. Mukamal was subsequently appointed Chapter 11 trustee for the Palm Beach Funds.

5.     Thereafter, pursuant to a confirmed joint plan of liquidation, Mr. Mukamal was appointed Liquidating Trustee for the Liquidating Trusts.

6.     Pursuant to the confirmed joint plan of liquidation, all claims and causes of action held by the Palm Beach Funds are reserved, preserved and retained by the Liquidating Trusts.

7.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(b) and may enter any order or final judgment.

8.     This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (H) and (O).

## ALLEGATIONS

### I.     *The Petters Investment*

#### A.     General Description of the Investment

9.     Beginning in approximately 1995, Thomas Petters ("***Petters***") began raising money by offering and selling promissory notes to members of the public.

10.     Petters offered and sold the notes to various feeder fund lenders, which in turn, raised their capital from private investors.

11. In offering and selling the notes, Petters represented to lenders that the proceeds from the sale of the notes would be used to finance so-called "purchase order financing."

12. Under Petters's version of purchase order financing, he arranged for the sale and delivery of overstock consumer electronics from manufacturers or suppliers to certain "big box" retailers such as Costco, Sam's Club and B.J.'s Wholesale Club. The financing provided by the lenders was necessary to bridge the period between when the suppliers demanded payment and when the retailers paid for the merchandise.

13. The main Petters entity that arranged these purchase and financing transactions was Petters Company, Inc. ("*PCI*"). Single purpose entities ("*SPE*") affiliated with PCI were formed by Petters and his associates to handle loans for particular lenders that financed the transactions.

14. The main suppliers that were allegedly selling the merchandise that formed the basis of the purchase order financing transactions were Nationwide International Resources, Inc. ("*Nationwide*") and Enchanted Family Buying Company ("*Enchanted*").

15. To evidence the purchase financing transactions, Petters or persons working on his behalf, typically provided a series of documents to the lenders including executed note documents, purported purchase orders from a retailer, purported bills of sale from the vendors, collateral and credit insurance and documents assigning a security interest in the underlying merchandise to the financing lender (collectively, the "*Loan Documents*").

**B.    The Palm Beach Funds's Investment in Petters**

16. The Palm Beach Funds were formed to invest in Petters purchase financing transactions.

17.    In particular, in 2002, the principals of the Palm Beach Managing Entities – Bruce Prevost and David Harrold – were introduced to Frank Vennes ("***Vennes***"). At that time, Vennes and his entity, Metro Gem, Inc. ("***MGI***"; and together with Vennes, the "***Vennes Parties***"), a Minnesota corporation, had invested in Petters purchase financing transactions for several years.

18.    Based on misrepresentations made by the Vennes Parties, the Palm Beach Funds raised monies from selling limited partnership stakes to investors and in the case of PBF II, by borrowing hundreds of millions of dollars from an offshore lender, Palm Beach Offshore Ltd.

19.    Nearly all of the monies raised by the Palm Beach Funds were then used to invest in Petters purchase financing transactions.

## II.    *The Petters Fraud*

20.    The Petters purchase financing transactions were in actuality an elaborate *ponzi* scheme.

21.    Namely, there was never any (i) merchandise or (ii) contracts to purchase or sell such merchandise with a particular big box retailer. Instead, Petters, conspiring with others, operated a multi-billion dollar *ponzi* scheme. In likely every instance that monies were sent to Nationwide or Enchanted by the Palm Beach Funds and other lenders to finance the purchase of merchandise, Nationwide and Enchanted deducted a small commission for their benefit and then remitted the remaining funds to PCI. Thereafter, such funds were used to repay earlier investors and fund the lavish lifestyle of Petters and that of his associates.

22.    The direct effect of Petters's fraudulent activities was that the Palm Beach Funds's investments in Petters purchase financing transactions were worthless.

23.    In September of 2008, agents for the Federal Bureau of Investigation raided PCI's offices. Thereafter, Petters was arrested by federal agents on October 3, 2008 and then indicted

on charges of mail and wire fraud, conspiracy to commit mail and wire fraud, conspiracy to commit money laundering and money laundering, all in connection with the PCI purchase financing transactions.

24.     Immediately after the FBI raid, the Vennes Parties, along with PCI, Petters and others, were placed into a federal receivership ("*Receivership*").

25.     On December 2, 2009, a jury in the United States District Court for the District of Minnesota found Petters guilty of all counts charged.

26.     On April 8, 2010, District Court Judge Richard H. Kyle sentenced Petters to 50 years in prison for his crimes.

27.     On September 29, 2010, PCI and Petters Group Worldwide, LLC pled guilty to wire fraud, conspiracy to commit wire fraud, and conspiracy to commit money laundering relating to their roles in the *ponzi* scheme.

28.     On April 20, 2011, Vennes was indicted for alleged criminal acts committed by him in connection with the Petters ponzi scheme.

## III.    *The Vennes Parties's Asset Distribution Plan*

29.     While the Receivership was pending, the Vennes Parties, along with the court appointed receiver, sought court approval of a plan to distribute the assets of the Vennes Parties and their affiliates [ECF No. 1652 in Case No. 08-05348-ADM] ("*Asset Distribution Plan*").

30.     Pursuant to the Asset Distribution Plan, investors that were "net losers" in MGI were allotted a distribution of the remaining assets of the Vennes Parties.  Conversely, investors in MGI that were "net winners" were entitled to no distribution of the Vennes Parties's assets.

31.     As set forth in the exhibits to the Asset Distribution Plan, Defendant was not listed as a "net loser" in MGI.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363
{Firm Clients/4189/4189-1/00860217.DOC.}

## *IV.   The Vennes Parties Action and Transfers to the Defendant*

32.     In conjunction with the filing of this adversary, Plaintiff, on behalf of the Palm
Beach Funds, will file an action in the Bankruptcy Court for the Southern District of Florida
against the Vennes Parties ("*Vennes Action*").

33.     The Vennes Action seeks to avoid all transfers made by the Palm Beach Funds to
the Vennes Parties within four years of the Petition Date.  Additionally, the Vennes Action seeks
an award of monetary damages in tort relating to the significant misrepresentations, omissions
and breach of fiduciary duties by the Vennes Parties to the Palm Beach Funds with respect to
their investing in Petters purchase financing transactions.

34.     As such, at all times relevant to the allegations set forth in this Complaint, the
Palm Beach Funds were creditors of the Vennes Parties.

35.     As set forth on Schedule 1, during the time period that the Vennes Parties were
committing these tortious acts and receiving transfers from the Palm Beach Funds, MGI made
transfers of its property to the Defendant ("*Transfers*").  The Palm Beach Funds reserve the right
to amend this schedule based on additional information obtained during discovery in this
adversary proceeding.

36.     Upon information and belief, Defendant received the Transfers in conjunction
with an investment made by the Defendant in MGI to fund Petters purchase financing
transactions.

37.     Defendant was not listed as a "net loser" of MGI as part of the Asset Distribution
Plan.  As such, and as set forth on Schedule 1, a portion of the Transfers made to Defendant by
MGI represent fictitious profits paid to the Defendant ("*Fraudulent Transfers*").

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363
{Firm Clients/4189/4189-1/00860217.DOC.}

## Count 1 – Fraudulent Transfer Pursuant to M.S.A. §§ 513.44 and 513.48 or other applicable law

38.    Plaintiff reasserts the allegations set forth in paragraphs 1 through 38 as if fully set forth herein.

39.    As set forth in the Vennes Action, and pursuant to M.S.A. § 513.41, the Palm Beach Funds are creditors of the Vennes Parties.

40.    MGI made the Fraudulent Transfers to or for the benefit of the Defendant within six years of the Petition Date.

41.    MGI did not receive reasonably equivalent value in exchange for the Fraudulent Transfers made to or for the benefit of the Defendant.

42.    MGI was insolvent at the time of the Fraudulent Transfers.

43.    The net assets of MGI were unreasonably small in relation to the Fraudulent Transfers.

44.    At the time the Fraudulent Transfers were made to or for the benefit of the Defendant, MGI was insolvent and would not be able to satisfy its liabilities as they came due.

45.    At the time the Fraudulent Transfers were made to or for the benefit of the Defendant, MGI was engaged in, or was about to engage in, a business or a transaction for which the remaining assets were unreasonably small in relation to the business or transaction.

46.    At the time of the Fraudulent Transfers, MGI intended to incur or believed that it would incur, debts that were beyond its ability to pay as such debts matured.

7

## Count 2 – Fraudulent Transfer Pursuant to M.S.A. §§ 513.45 and 513.48 or other applicable law

47.     Plaintiff reasserts the allegations set forth in paragraphs 1 through 38 as if fully set forth herein.

48.     As set forth in the Vennes Action, and pursuant to M.S.A. § 513.41, the Palm Beach Funds are creditors of MGI.

49.     MGI made the Fraudulent Transfers to or for the benefit of the Defendant within six years of the Petition Date.

50.     MGI did not receive reasonably equivalent value in exchange for the Fraudulent Transfers to or for the benefit of the Defendant.

51.     MGI was insolvent at the time of the Transfers.

### Count 3 – Unjust Enrichment

52.     Plaintiff reasserts the allegations set forth in paragraphs 1 through 38 as if fully set forth herein.

53.     The Defendant received a benefit by virtue of the Fraudulent Transfers made to the Defendant.

54.     The Defendant has knowledge of such benefit.

55.     The Defendant voluntarily accepted and retained the benefit conferred by MGI.

56.     The Defendant's receipt of the benefit of the Fraudulent Transfers unjustly enriched the Defendant to the detriment of the Palm Beach Funds.

57.      Under the circumstances set forth herein, it would be inequitable for the Defendant to retain such benefit.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/4189/4189-1/00860217.DOC.}

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

(a)     With respect to Counts 1 and 2, enter judgment against the Defendant in the total amount of the Fraudulent Transfers received by the Defendant or made for the Defendant's benefit, along with all other transfers made to the Defendant or for the Defendant's benefit which are avoidable under Counts 1 and 2 that are later discovered, and all other relief provided for under § 513.48 (or other applicable law);

(b)     With respect to Count 3, enter judgment against the Defendant in the total amount of the Fraudulent Transfers;

(c)     With respect to all Counts, award Plaintiff's reasonable attorney's fees and costs to the extent allowed under applicable law or statute;

(d)     With respect to all Counts, award prejudgment interest to the extent allowed under applicable law or statute; and

(e)     Grant such further relief this Court deems just and proper.

> s/ Michael S. Budwick
> Michael S. Budwick, Esquire
> Florida Bar No. 938777
> mbudwick@melandrussin.com
> Jessica L. Wasserstrom, Esquire
> Florida Bar No. 985820
> jwasserstrom@melandrussin.com
> Jonathan S. Feldman, Esquire
> Florida Bar No. 12682
> jfeldman@melandrussin.com
> MELAND RUSSIN & BUDWICK, P.A.
> 3000 Southeast Financial Center
> 200 South Biscayne Boulevard
> Miami, Florida 33131
> Telephone: (305) 358-6363
> Telecopy: (305) 358-1221

> Attorneys for Plaintiff

9

| Schedule 1 | | | | |
|---|---|---|---|---|

| Transaction Date | Check No | Payee | Deposit Amount (Contribution) | Disbursement Amount (Withdrawal) |
|---|---|---|---|---|
| 12/11/2003 | 20740 | Mark Johnson | | 150,000.00 |
| | | **Mark Johnson Total** | **$          -** | **$     150,000.00** |